UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------
ADAR 1165 LLC,

       Plaintiff,

  -v-

UNITED STATES LIABILITY
INSURANCE COMPANY,

       Defendant.
---------------------------------

23-cv-6437 (JSR)

OPINION

JED S. RAKOFF, U.S.D.J.:

    Before the Court are the parties' cross-motions for summary judgment in this insurance coverage dispute. The defendant-insurer issued a commercial property insurance policy on two contiguous properties owned by plaintiff. During a winter storm in December 2022, a frozen pipe burst in one of the units at the properties and plaintiff promptly filed an insurance claim. Defendant's investigation of plaintiff's claim uncovered gas bills that show one of the four units in question was using essentially no gas for the three months leading up to the loss, suggesting the heat in that unit was turned off. Accordingly, defendant denied plaintiff's insurance claim based upon a provision in the policy that excluded coverage for damage caused by burst frozen pipes "unless . . . [y]ou do your best to maintain heat in the building or structure." This litigation ensued.

    Resolution of these cross-motions turns on the interpretation and application of the "do your best" exclusion. Plaintiff argues that it should win because, as a matter of law, what it means to "do your

1

best" is inherently ambiguous and ambiguities in an insurance contract must be construed in favor of the insured. Defendant argues that the "do your best" language is unambiguous and thus plaintiff should lose. On March 28, 2024, the Court denied both the motions for summary judgment of both parties by "bottom-line Order." *See* Dkt. 25. This Opinion sets forth the reasons for that ruling.

I. **Factual Background**

Plaintiff ADAR 1165 LLC ("ADAR") is the owner of two contiguous properties located at 1165 223rd Street and 1167 223rd Street in the Bronx, New York. Defs. Resp. to 56.1 Statement (Dkt. 18) ¶ 1. The two properties each consist of two subdivided units, one on the first floor and one on the second floor. Each unit had its own boiler and own water heater. Pls. Resp. to 56.1 Statement (Dkt. 20) ¶¶ 4-5. During the relevant period, all four units were vacant. Id. ¶ 3. Defendant United States Liability Company is an insurer that issued a commercial property insurance policy that covers these two properties. Defs. Resp. to 56.1 Statement (Dkt. 18) ¶ 4; Pls. Resp. to 56.1 Statement (Dkt. 20) ¶ 6.

Between December 23, 2022 and December 26, 2022 temperatures in New York dropped below freezing for an extended period as a result of Winter Storm Elliott. Pls. Resp. to 56.1 Statement (Dkt. 20) ¶ 10. On December 28, 2022, plaintiff discovered that frozen pipes had burst under the kitchen sink in the second floor unit at 1165 223rd Street ("1165 Floor 2") and in the second floor unit at 1167 223rd Street ("1167 Floor 2"), resulting in water damage to the properties. Pls.

2

Resp. to 56.1 Statement (Dkt. 20) ¶¶ 11-12. After the pipes burst, plaintiff hired a plumber to replace them and to winterize the property. *Id.* ¶¶ 13-14. The next day, plaintiff notified defendant of the water damage sustained at the properties and submitted a claim pursuant to the insurance policy. *Id.* ¶ 16.

The parties agree that this loss would be covered by the insurance policy assuming no exclusion applies. However, the policy contains the following coverage exclusion:

> We will not pay for loss or damage caused by or resulting from any of the following: . . .
>
> g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:
>
>> (1) You do your best to maintain heat in the building or structure; or
>>
>> (2) You drain the equipment and shut off the supply if the heat is not maintained.

Pls. Resp. to 56.1 Statement (Dkt. 20) ¶ 8.[1]  Thus, whether there was coverage turns on the question of whether plaintiff "d[id its] best to maintain heat in the building."

---

[1] The policy also contains a provision that makes it a "condition of th[e] policy that the Insured shall maintain heat in the building . . . to prevent freezing of plumbing." Pls. Resp. to 56.1 Statement (Dkt. 20) ¶ 6. Plaintiff argues that this conditions is not relevant insofar as the do-your-best exception is satisfied, noting that the maintance of heat condition specified that "[a]ll other terms and conditions of this policy remain unchanged." Pls. MSJ (Dkt. 16) at 9. Defendant offers no response and instead focuses its argument on the do-your-best exception. Accordingly, for

3

The defendant hired an independent adjuster to investigate the claim and evaluate the applicability of this exclusion. *Id.* ¶ 18. The adjuster then hired an engineer to conduct an analysis of the heating system's fuel consumption for the four units over the relevant period based upon utility bills provided by plaintiff. *Id.* ¶¶ 19-20. The expert then prepared a report summarizing his findings. *See* Rpt. Of William C. Tintle, P.E. ("Tintle Rpt.") (Dkt. 22-3).[2]

The Tintle Report explained that, as temperatures dropped over the course of these three months, one would expect to see steadily increasing gas consumption as the heating system worked harder to keep temperatures at a stable level. To measure the increasing need for gas consumption, the report describes the concept of "heating degree days," which is a measure of the difference between outdoor temperatures and a comfortable indoor temperature. *See* Tintle Rpt. at 4-5. While the heating degree days steadily increased over the relevant period, the report observes that the gas consumption in 1167 223rd Floor 2 remained constant at between 5 and 7 therms.[3] In contrast, the consumption of gas in the other three units increased as the weather got colder,

---

purposes of this Opinion, the Court assumes this separate maintenance of heat condition has no relevance.

[2] Plaintiff argued in its opposition that the Court could not rely on this report because it was inadmissible hearsay. Defendant then submitted a declaration from Mr. Tintle attesting to the veracity of the report and its conclusions.

[3] A "therm" is a unit of heat energy used to measure the amount of natural gas consumed for heating.

consuming between 70 and 141 therms of gas during the coldest period between November and December. The uncontested gas consumption for the four units is summarized in the table below.[4]

| Unit | September 26, 2022 to October 26, 2022 | October 26, 2022 to November 28, 2022 | November 28, 2022 to December 28, 2022 |
|---|---|---|---|
| 1165 223rd St., Fl.1 | 6 therms | 41 therms | 114 therms |
| 1165 223rd St., Fl.2 | 14 therms | 38 therms | 70 therms |
| 1167 223rd St., Fl.1 | N/A[5] | 56 therms | 141 therms |
| 1167 223rd St., Fl.2 | 5 therms | 7 therms | 6 therms |

The report concludes that the boiler in 1167 Floor 2 was not operating at all during this period and the minimal gas consumption was solely used to operate the water heater. Tintle Rpt. at 4-5. While unit 1165 Floor 2 was heated to a much greater degree during this period, the report hypothesizes that the pipe in this unit burst only after the frozen pipe in 1167 Floor 2 caused the basement boiler controls to shut down, thereby turning off heat in 1165 Floor 2 as well. *See id.* at 7. Alternatively, the report notes it is possible that someone turned off the boiler for 1165 Floor 2 in the middle of

---

[4] The report apparently states the incorrect gas consumption for 1167 Fl. 1 at 4 therms for November 28, 2022 to December 28, 2022, when in fact the enclosed gas bills reveal it is 141 therms. Similarly, it incorrectly states the gas usage for 1165 Fl. 1 at 111 therms, when the gas bills indicate it was 114 therms. These inaccuracies do not appear to undermine the reports core conclusions, however.

[5] The billing records for this period were not included in the report.

the November 28, 2022 to December 28, 2022 period. Id. The report concludes that, based on the author's professional opinion, "[h]eat was not adequately maintained inside Apartment 1167 2nd Floor in the days leading up to the subject pipe system failure." Id.

Based upon the findings of the Tintle report, defendant denied plaintiff's insurance claim and the instant lawsuit followed.

## II. Discussion

Both parties have cross-moved for summary judgment as to liability. The parties apparently agree that both motions turn on the interpretation and application of the exclusion that precludes coverage where the loss is "caused by or resulting from freezing, unless . . . You do your best to maintain heat in the building or structure."

### A. Legal Standard

In general, an insurer bears the burden of establishing that an exclusion from coverage applies to a particular case and that the exclusion is "subject to no other reasonable interpretation." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 183 N.E.3d 443, 448 (N.Y. 2021) (quotation omitted). However, "where the existence of coverage depends entirely on the applicability of an exception to the exclusion, the insured has the duty of demonstrating that it has been satisfied." *Pro's Choice Beauty Care, Inc. v. Great N. Ins. Co.*, 190 A.D.3d 868, 870 (N.Y. App. Div. 2021) (quoting *Borg-Warner Corp. v Insurance Co. of N. Am.*, 174 A.D.2d 24, 31 (N.Y. App. Div. 1992)); *accord Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021).

Since it is undisputed that the pipes burst from freezing, plaintiff bears the burden of establishing that the exception to the exclusion applies, i.e. that it used "best efforts to maintain heat."[6]

Before addressing the factual record, plaintiff offers a series of legal arguments that plaintiff contends themselves warrant summary judgment in its favor.

*First*, plaintiff argues that "do your best to maintain heat" is ambiguous, and so must be interpreted in plaintiff's favor under the doctrine of *contra profurentum*, requiring that a contract be construed against the drafter. *See* Pls. Opp. (Dkt. 21) at 6-7. Defendant responds by pointing to several New York cases that found the same or similar provisions as that at issue here were unambiguous. *See* Defs. Reply (Dkt. 22) at 5-6. Accordingly, defendant argues the policy language should be construed in its favor as a matter of law. As explained below, both parties overstate the strength of their legal position.

Under the doctrine of *contra profurentum*, ambiguities in contract language must be interpreted against the drafter. *See White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1019 (N.Y. 2007). A particularly strong form of this doctrine applies in the insurance context, requiring that "any ambiguity [in an insurance contract] must be construed in favor of the insured and against the insurer." *Id.* "[T]he test to determine whether an insurance contract is ambiguous focuses

---

[6] Indeed, plaintiff apparently concedes that this is an "exception to the exclusion." Pls. Opp. (Dkt. 21) at 5.

on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 81 (N.Y. 2015) (quotation omitted).

Critically, the ambiguity of a particular provision cannot be assessed in a vacuum. Rather, the question is whether the particular provision is ambiguous as applied to the facts of a particular case. *See* Restatement of the Law of Liability Insurance § 4 cmt. a ("An ambiguous policy term is a term that has at least two interpretations to which the language of the term is reasonably susceptible when applied to the facts of the claim in question. . . . A term that has a plain meaning when applied to one claim may not have a plain meaning when applied to another claim."). This rule undermines much of plaintiff's argument that the "do your best" exception is ambiguous. While it is true that any number of scenarios might arise that would present hard questions about whether a party used best efforts, the only question that is relevant here, for purposes of determining ambiguity, is whether the efforts undertaken by plaintiff in this situation constituted best efforts.

The rule that ambiguity depends on context also explains the differing outcomes reached in the cases each side cites. In *McAleavey v. Chautauqua Patrons Insurance Co.*, the New York appellate division found that an analogous provision to that at issue here requiring the insured use "reasonable care" to maintain heat was ambiguous, and thus upheld summary judgment in favor of the insured, where the insured had

taken a variety of steps to prevent frozen pipes, including winterizing the property, ensuring the internal temperature was set to 50 degrees and visiting it several times leading up to winter, at least where the resulting property damage resulted from a mechanical failure. 195 A.D.3d 1551, 1552-53 (N.Y. App. Div. 2021).

By contrast, in *Nesher, LLC v. Realm National Insurance Co.*, the appellate division found a provision requiring the insured "do [its] best" to maintain heat unambiguously precluded coverage where plaintiff failed to take even basic steps to maintain heat on the premises. 6 A.D.3d 242, 243 (N.Y. App. Div. 2004). For example, the insured "failed to purchase oil for the heating tank," failed to instruct the caretaker of the property "on how to maintain the heat," and failed to tell the caretaker that "the premises were heated with oil, how to check for oil in the tank, or where the oil tank was located." *Id.*; *see also Stephenson v. Allstate Indem. Co.*, 160 A.D.3d 1274, 1275 (N.Y. App. Div. 2018) (finding plaintiff failed to take "reasonable care" to maintain heat where plaintiff did not monitor gas consumption or make any arrangements to ensure property was inspected or winterized).

These cases represent two possible extremes: taking substantial steps to maintain heat and taking essentially no steps to maintain heat. These cases hold that summary judgment may be appropriate, for one side or the other, at either end of the spectrum. But, as explained in Section II.B, *Infra*, this case false somewhere between these two poles.

*Second*, plaintiff argues that if the "do your best" standard were applied as defendant suggests, it would "require[] such extreme action on the part of the insured so as to prevent freezing [of pipes] altogether," a result that "would defy credulity, as that would negate the purpose of the exception to the exclusion for freezing." Pls. MSJ (Dkt. 16) at 11. This hyperbole is unwarranted. One can imagine any number of situations where a property owner took substantial steps to maintain heat but nonetheless failed to prevent frozen pipes through no fault of their own. For example, if an unforeseeable mechanical failure occurs on an otherwise well-maintained system, as happened in *McAleavey* (discussed above), there would clearly be coverage. But where a party makes no efforts at all, no reasonable insured would believe they did their best to maintain heat within the meaning of the policy, and the policy would unambiguously preclude coverage.

*Third*, plaintiff argues that, in light of the purported ambiguity in the "do your best" language, it should be evaluated on a strictly subjective basis, and summary judgment should accordingly be granted based solely on the fact that the owner of ADAR believed he did his best. Pls. MSJ (Dkt. 16) at 10; Pls. Opp. (Dkt. 21) at 6. Plaintiff cites no authority to support this proposition, which is contrary to the law. In general, the terms of an insurance contract are to be interpreted based upon "the reasonable expectations of the average insured," an objective standard. *Universal Am. Corp.*, 37 N.E.3d at 81. The insured's subjective understanding of what a term means is insufficient to create ambiguity in an otherwise unambiguous term.

10

*Slattery Skanska Inc. v. Am. Home Assur. Co.*, 885 N.Y.S.2d 264, 274 (N.Y. App. Div. 2009) ("That one party to the agreement may attach a particular, subjective meaning to a term that differs from the term's plain meaning does not render the term ambiguous."). Plaintiff cites no case where a subjective standard was adopted in similar circumstances to those here, and the Court declines to be the first.[7]

Finally, one open question, not addressed by the parties briefing, is whether the "do your best" standard requires mere reasonable care or something more. Defendants apparently assume that only reasonable care is required, and accordingly the Court will assume the same for purposes of this Opinion. However, this remains a question that will need to be addressed at trial.[8]

B. **Application**

Both parties contend that the factual record unambiguously supports their position and argue that they are entitled to summary judgment.

---

[7] And even if a subjective test were employed, it is not clear that plaintiff would be entitled to summary judgement based on that: while plaintiff's owner testified that he believed he used best efforts, a jury could well reject that self-serving testimony in light of the evidence discussed below.

[8] In discussing the term "best efforts," Garner's Dictionary of Legal Usage notes as follows: "[T]he majority view is for courts to consider *best efforts* as imposing a higher standard than *reasonable efforts*. But others treat the two as synonymous. . . . [T]he two phrases are fuzzy, and the judicial decisions irreconcilable, and the effects admittedly uncertain." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 108 (3d ed. 2011), reprinted in Black's Law Dictionary, *Best Efforts* (11th ed. 2019).

In support of its motion, plaintiff principally relies on the testimony of Fred Moradyfar, the owner of plaintiff. Moradyfar testified that he and his partner Edmon Adelipour would visit the property two to three times a week and would check the entire building for issues. *See* Defs. Resp. to 56.1 Statement (Dkt. 18) ¶¶ 10-11. Moradyfar claimed that, during these inspections, he would visit every unit, check the thermostat in every unit and check the boilers to ensure that they were working. Moradyfar Dep. (Dkt. 15-8), at 37-38; Defs. Resp. to 56.1 Statement (Dkt. 18) ¶¶ 11-13, 17. Plaintiff also hired a property manager who was tasked with conducting weekly inspections of the property. The property manager was required to fill out and sign a check list on which the manager was to report, among other things, the temperature on the property. *See* Agulnick Decl. Ex. H (Dkt. 15-8); Defs. Resp. to 56.1 Statement (Dkt. 18) ¶¶ 14-15. Finally, although plaintiff fails to point this out, a pipe in 1165 Floor 2 burst even though that unit was consuming gas (unlike 1167 Floor 2).

In response, defendant principally relies on the records of gas consumption and associated Tintle Report analyzing them. As noted above, the undisputed evidence shows that 1167 Floor 2 was consuming essentially no gas during the three months leading up to the incident. *See* Pls. Resp. to 56.1 Statement (Dkt. 20) ¶¶ 25-30. Even absent Tintle's Report, the gas bills alone are powerful evidence that the heat was not turned on in this unit for the entire period. *See* Tintle Rpt. at 4-5. It is also undisputed that no boilers, hot water heaters

12

or thermostats had to be replaced in the building following the incident, which suggests that the frozen pipe was not caused by any unforeseeable mechanical failure. Pls. Resp. to 56.1 Statement (Dkt. 20) ¶ 15. Finally, the inspection record created by the property manager shows a steadily declining temperature leading up to the incident, with an internal temperature of 41 degrees recorded on 12/16 (days before the pipe burst). Agulnick Decl. Ex. H (Dkt. 15-8).

The above evidence creates a genuine dispute of fact that warrants denial of the summary judgment motions of both sides. If it were in fact the case that plaintiffs (a) regularly visited the property to confirm the heat was at an appropriate level, and (b) hired a property manager to routinely do the same, then plaintiff might well be entitled to summary judgment given the rule that an insurance contract must be construed in favor of the insured. But the evidence put forward by defendant demonstrates that the heat was not running at all in 1167 Floor 2 for the three months leading to the incident, directly contradicting Moradyfar's testimony that he regularly checked to ensure the heat was properly operating. In addition, the fact that the property manager observed declining temperatures leading up to the storm but did nothing also supports an inference of negligence.[9] Thus, plaintiff has failed to carry its summary judgment burden.

---

[9] Plaintiff argues, without citation, that any failure by the property manager is not attributable to plaintiff, because the policy only required "you," defined as the Named Insured, to "do your best," not any third-party. See Pls. MSJ (Dkt. 16) at 16. This argument fails for at least three reasons. *First*, the "Named Insured" on the policy was the corporate entity ADAR, which can only ever act through its

13

On the other hand, while it is apparently undisputed that the heat was not running in 1167 Floor 2 (or at least the unit was not consuming gas) for the three months leading up to the loss, that fact alone is insufficient to entitle defendants to summary judgment. If Moradyfar in fact visited the property on a regular basis as he testified, set the thermostat, but by chance did not notice that the heat was not actually operating (for example, because he only visited on warm days or heat from the other units kept the unit somewhat warm) a jury could reasonably conclude that the "do your best" standard is satisfied, even if they ultimately did not detect and prevent the loss. While the fact that no boilers, hot water heaters or thermostats had to be replaced after the incident suggests the lack of heat was not caused by a mechanical failure, it does not completely rule out that possibility. This is particularly true in light of the fact that a pipe froze in 1165 Floor 2 even though that unit was consuming gas. Defendants offer nothing more than speculation as to why the pipe

---

agents. The property manager was apparently ADAR's agent, and so under basic agency principles the acts of property manager were chargeable to ADAR. *Second*, under contract principles, the fact that plaintiff delegated its obligation to use best efforts does not relieve it of responsibility of any non-performance by the delegee. *See* Restatement (First) of Contracts § 160(4) ("Neither the delegation of performance by an obligor, nor a contract with the obligor by the person to whom the performance is delegated to assume the obligor's duty, extinguishes it or prevents recovery of damages from him if the duty is not performed."). *Third*, the fact that the property was not heated for three months and the property manager did nothing in response to the declining heat supports an inference that the property manager was not properly instructed in how to perform his duties.

14

burst in 1165 Floor 2, leaving room for a jury to draw different inferences from that fact.

Defendant further argues that it is entitled to summary judgment because plaintiff failed to take certain specific measures, including (a) failing to review the gas bills showing that 1167 Floor 2 was not being heated, (b) failing to visit the property during the specific cold snap at issue, and (c) failing to have a protocol in place to visit whenever temperatures dropped. While these were certainly additional measures that could have been taken, whether the failure to adopt them was negligent -- considering the other measures that were adopted -- constitutes a question of fact for the jury. Had defendant wished to require all insureds to adopt these measures to prevent frozen pipes, the policy form could have done so, but since the terms of the policy do not contain such categorical requirements, defendant apparently left the selection of methods to the insured's discretion. It would be inappropriate for the Court to import such a categorical requirement where it was omitted from the insurance contract itself. *See McAleavey*, 195 A.D.3d at 1553 (rejecting a "per se rule that a policyholder's failure to conduct regular interior inspections at specific intervals, irrespective of any other efforts, constitutes a failure to use 'reasonable care' to maintain heat").

### III. Conclusion

For the forgoing reasons, the Court denied both plaintiff's and defendant's motions for summary judgment.

New York, NY  
April 8, 2024

_____  
JED S. RAKOFF, U.S.D.J.

16